Batchelor, &c., v. Planters' National Bank of Louisville.

78 435
d108 388

CASE 88—EQUITY—APRIL 9.

# Batchelor, &c., v. Planters' National Bank of Louisville.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The bond of appellant Batchelor, as cashier, is, that he shall "faithfully and honestly discharge his duties as cashier aforesaid, and faithfully apply and account for all such moneys, funds, and valuables, and return the same, on proper demand, to the order of the board of directors of said bank, or to the person or persons authorized to receive them.

2. The appellants were entitled, upon their motion, to a trial by jury of the issues made in the case.

3. The want of diligence on the part of the directors constitutes no defense on the part of the cashier for a neglect of his duty; and if the loss has been caused by his negligence, he and his sureties are liable. The issues were purely legal, and the question of a want of diligence on the part of the cashier in the discharge of his duties was proper for a jury to determine, and the case should not have been transferred to equity.

4. The right of the bank directory to appoint, control, and direct the labors of subordinates, subjecting their work to the supervision of the cashier, is necessarily implied. The position assigned a particular subordinate may afford facilities to plunder his principal and render it more difficult to detect the fraud, still it does not increase the diligence required of the cashier.

5. The cashier is not an insurer of the honesty and fidelity of those who hold subordinate positions in the bank; he is required only to exercise that degree of diligence in regard to the action of his subordinates consistent with the discharge of all his duties in connection with the bank that is reasonable and practicable.

6. He is not required to examine by actual inspection every original entry made by those under him; but his care extends to a general supervision of the books and affairs of the bank; and having faithfully done this, he has discharged his duty as cashier.

HARLAN & WILLSON FOR APPELLANTS.

1. The transfer to equity was error. (Civil Code, secs. 4, 5; Story Eq. Juris., 458, 459; Minor's Inst. on Law, vol. 4, 1219; 5 Gratt., 427; 2 Rand., 449; 2 Leigh., 490; 7 Ib., 402; Civil Code, sec. 347.)

2. Erred in refusing a trial by jury. (Petty v. Malier, 15 B. Mon., 605; 15 B. Mon., 73; Civil Code, sec. 10.)

3. No demand is averred in the petition. (8 Bush, 612; 14 Bush, 297.)

4. Batchelor came up to the measure of diligence which the law demands from him as cashier. (Morse on Banking, 182.)

BARRET & BROWN FOR APPELLANTS.

1. No demand is averred. (Owens v. Ballard County Court, 8 Bush, 612; 14 Bush, 300.)

2. The proof shows that Batchelor was diligent to an extraordinary degree. (Morse on Banking, 182.)

3. Appellants were entitled to a jury. (15 B. Mon., 605; Ib., 74; 5 J. J. Mar., 57.)

4. As to appellant Pepper, his plea of discharge in bankruptcy should have prevailed.

A. DUVALL, W. LINDSAY, AND JNO. & J. W. RODMAN FOR APPELLANTS.

1. It is not averred that the board of directors at any time made an order directing Batchelor to deliver the moneys to "any person or persons." (Rev. Stat., sec. 6, art. 3, chap. 26; Owens v. Ballard County Court, 8 Bush, 612; Rev. Stat., sec. 9, art. 3, chap. 27.)

2. The chancellor erred in transferring the case to equity, and erred in refusing a trial by jury. (Civil Code, sec. 10.)

3. Batchelor's business was that of cashier; it was impossible for him to do all the business, and he is not liable for the dishonesty of his subordinates, unless his *laches* has caused it. (Morse on Banking, 142; Ib., 182.)

JOHN ROBERTS AND RUSSELL & HELM FOR APPELLEE.

This suit was brought and prosecuted under the old Code. The Jefferson court of common pleas takes the place of the Jefferson circuit court as to civil cases; and the Louisville chancery court, under the act approved January 17, 1854 (Myers' Code, 228), has all equity jurisdiction under said chapter. (Civil Code, 769.)

1. There was no discretion in the court transferring the case to equity. The specific allegations of the petition showed a violation of the trust reposed in Batchelor, and it should have been transferred.

2. It was not proper to try the facts in the case before a jury. The complicated matters connected with this trust and the necessity for an examination of them by skilled accountants made it peculiarly the subject of equity jurisdiction.

3. It was the duty of the cashier to hold the money of the bank against every intrusion. He must inspect the books, and discover all approaches to its money. (10 Ohio, 167; 1 Wallace, 140; 21 Howard's U. S. Rep., 4; McLean, 210; 37 Maine, 522; 1 Peters, 68; 3 Mason, 506; 10 Wallace, 650; Graves v. Lebanon Nat. Bank, 10 Bush, 28; 6 Mon., 104.)

Batchelor, &c., v. Planters' National Bank of Louisville.

4. No formal demand was necessary. (Owens v. Ballard County Court, 8 Bush, 611.)

5. As to Pepper, there was no breach of the conditions of the bond until April 11, 1868, and therefore his bankruptcy cannot avail him.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted by the Planters' National Bank of Louisville on the bond of its cashier, J. W. Batchelor, and a recovery had of fifty thousand dollars against him and his sureties, from which they prosecute this appeal.

The condition of the bond is that the cashier shall "faithfully and honestly discharge his duties as cashier aforesaid, and faithfully apply and account for all such moneys, funds, and valuables, and deliver the same, on *proper demand*, to the *order* of the board of directors of said bank, or to the person or persons authorized to receive them." Signed by Batchelor as principal, and Black, Pepper, and others, his sureties.

It is alleged in the original petition that the cashier had violated the stipulations of his bond, in failing to account for the moneys of the bank placed in his custody and under his control as such, amounting to one hundred and four thousand nine hundred and fifty-six dollars; that the sum unaccounted for greatly exceeds the penalty of the bond declared on, and therefore they ask, as against the sureties, a judgment for fifty thousand dollars, their liability being limited to that sum by the terms of the covenant.

It is further alleged that the appellee (plaintiff) had made due and proper demand of the cashier for the sum of fifty thousand dollars, but to pay the same, or any part thereof, he had refused and still refuses, &c.

The appellee, under a rule obtained to make the allegations of the petition with reference to the failure to account

more specific, filed an amended petition, in which each item
or sum of money alleged to have been received by the
cashier, and for which he failed to account or pay over, is
definitely stated, as follows: September 1st, 1869, $1,530.46;
September 1st, 1870, $5,538.83; September 1st, 1871,
$15,539.48; August 31st, 1872, $29,448.91; September
1st, 1873, $26,722.61; September 1st, 1874, $44,205.50;
September 1st, 1875, $104,950.56.  Of these several sums,
alleged to have been in the custody and under the control
of the cashier, it is averred that he has not yet paid over or
accounted for the sum of $70,456.56.  No demurrer was
interposed to the petition, but answers filed, and the case
progressed upon issues raised by the original and subsequent
pleadings resulting in the judgment complained of.

It is now insisted that the statements of the petition are
insufficient to support the action, because there is no aver-
ment of a formal demand by some one authorized to receive
the money from the cashier, that being, by the terms of the
covenant, a condition precedent to the right of recovery.
The breach of the covenant alleged in the original petition
is, *the failure of the cashier to account for the money and
deliver it on the order of the directors, or to some one author-
ized to receive it.*  In a case like this it is necessary, as was
decided by this court in the case of Owens against the Ballard
County Court, to aver a demand of the money by some one
entitled to receive it.  Neither the president or any individ-
ual director of the bank could have lawfully demanded the
money or have received it from the cashier, without an order
of the board authorizing the demand and the payment over
by the cashier.  It does not appear from the petition that
the cashier had resigned or been removed from his position,
or that the bank had ceased to have an existence, and, in

the absence of a formal demand, a demurrer, if entered, should have been sustained.    The cashier was required to deliver or account for the money, by the express terms of the covenant, on a proper demand, to the order of the board of directors, or to the person or persons authorized to receive the funds, and the facts should have been stated, in order that the court might determine whether or not a proper demand had been made.    Batchelor and his sureties being sued for an alleged balance of moneys unaccounted for, they were not in default until they had failed to pay over or account for the money as ordered by the board of directors. (Owens v. Ballard County Court, 8 Bush.)    In the case of Owens there was a demurrer filed to the petition, and the failure to aver a proper demand was one of the objections urged.    In the present case, the answers of the appellants, the sureties, traverse the allegation with reference to a demand, by alleging that "they have no information enabling them to form a belief as to whether a *proper demand* was made by the plaintiff," thus raising an issue curing the defect in the original petition, and perfecting the plaintiff's cause of action.

An amended petition was also filed by the appellee on the 4th of January, 1877, that had been offered on the 23d of December, 1876, upon the terms that the allegations contained in the amendment were to be considered specifically controverted on the record.    This amendment charges, in substance, that the cashier, Batchelor, carelessly and negligently permitted incorrect entries to be made in the books of the appellee, whereby the employees of the bank could abstract and embezzle its money and conceal such abstractions from the bank; that by reason of the false and deceptive entries made in the books of the plaintiff, it appeared

that less money was received on deposit from time to time than the plaintiff did actually receive through its cashier, causing the loss sustained by the plaintiff, &c. These amendments changed to some extent the nature of the claim made in the original petition, by seeking to make Batchelor and his sureties liable for the acts of other employees in the bank by reason of the negligence and want of diligence on the part of the cashier. The original petition sought to recover the money in the custody and control of the cashier and for which he had not accounted. The amendment sought to make him liable for the dishonesty of others, caused by his neglect of duty. In the first instance it was only incumbent on the bank to show the custody of the money by the cashier and a deficit in the funds; in the second count, negligence on the part of the cashier, in permitting the improper application of the moneys of the bank by others, had to be established and no demand was necessary. Besides, the answers of the cashier and his sureties to the original petition created issues that dispensed with the necessity of any demand. The failure of the cashier to account for the moneys in his hands is expressly denied, and also the extent of the wrongful conversion of the bank's funds by Rehim; but it is distinctly alleged or admitted by the answers that various sums of money were abstracted from the bank by the teller and book-keeper, Rehim, and appropriated to his own use without the knowledge or consent of the cashier, and when, by the exercise of all the vigilance required of the cashier, he could not have prevented or detected the fraud. These facts, relied on in the defense, are controverted by the reply, and the same issue tendered by the original answer and reply on the question of negligence that is made by the subsequent amended petition filed by the appellee. The

burden on the issue raised by the original answers was on the appellant Batchelor and his sureties to show proper diligence on the part of the cashier in order to avoid liability on account of the wrongful act of Rehim, that constituting one of the grounds of defense; but as the appellee, by a subsequent amended pleading, alleged the negligence as an independent or additional breach of the covenant, it shifted the burden and required the plaintiff to establish negligence in order to a recovery.

It is not attempted by the proof to establish any claim against Batchelor and his sureties by reason of the latter having appropriated the money to his own use, or failing to account for money in his hands. The whole issue as presented by the proof was, whether the cashier was liable for the loss occasioned by the dishonesty of Rehim, by reason of a want of diligence on his part in supervising the affairs of the bank, and on such an issue no demand was necessary.

·The principal ground for a reversal of the judgment consists in the denial to the appellants of their right to have the issues made, tried by a jury. The action was instituted in the Jefferson court of common pleas, having jurisdiction in ordinary actions. The issues were purely legal, and we see no reason for transferring the action to a court of equity. The appellants objected·to the transfer from the one jurisdiction to the other, and after the case had reached the chancellor a motion was made to remand the case to the proper forum.

A motion was also made to try the issue of fact out of ·chancery, and this was denied. No equitable issue has been tendered by any pleading filed, and however great the delay or the inconvenience resulting from a jury trial, in the inspection and examination of the books of the bank, or the facility

with which the master could have ascertained the fraudulent entries and the various sums of money abstracted, no such reasons authorized a transfer of the action to the equity docket, or were sufficient to deprive the appellants of their right to have a jury pass upon the issues raised.

The question of a want of diligence on the part of the cashier in the discharge of his duties, and for which he and his sureties are sought to be made liable, was a question proper for the jury to determine; and in fact, the result of that issue must end the controversy, as there is but little doubt as to the default of Rehim and the sums of money abstracted by him.

Counsel for the appellee maintain that no injustice has been done the appellants in denying the trial by jury, as their answers constitute no defense to the action, except as to the amount of money lost to the plaintiff, and this amount is clearly established by the uncontroverted proof in the cause.   It is alleged in the answer of the sureties "that the board of directors of the appellee could, by reasonable and proper diligence, have discovered the first alleged defal- cation occurring in 1869, and that, by reasonable and proper diligence, could have discovered each of the subsequent defalcations set out in the amended petition; but the direct- ors, so far from exercising such diligence, and without suffi- cient examination, reported that the bank had in its vaults and under its control all the moneys, resources, and assets to which it was entitled," &c.   While denying any negligence- on the part of their principal, if these allegations can be regarded in the light alone of an argumentative pleading,. the legal inference from such admissions would lead to the conclusion that like diligence on the part of the cashier, their principal, would have produced a similar result.   It is not.

pretended that the directors knew that Rehim was a dishonest man at the time of his appointment, or subsequent. thereto, or that any officer of the bank had reason to suspect him, until after his fraudulent acts had been discovered.

The want of diligence merely on the part of the directors constitutes no defense on the part of the cashier for a neglect of his duty; and if the loss has been caused by his negligence, he and his sureties are liable, although the directors. might have discovered the fraud by the exercise of reasonable diligence; nor does the fact of Rehim having acted in the double capacity of teller and general book-keeper, relieve the cashier from the exercise of that diligence, in the inspection of the general condition of the bank and its resources, required of him by reason of the position he occupied. When accepting the position, he undertook to discharge his duties and to supervise the action of his subordinates, in. so far as was practicable with reference to the discharge of his other duties. The acceptance of the cashier's bond does not preclude the bank or its directors from designating the position of a subordinate, and the character of the work to be done by him, when not interfering with the duties properly belonging to the cashier. Such action on the part of the board cannot affect the liability of the sureties, and if, in the opinion of the board, the subordinate can discharge the duties of both the teller and general book-keeper, his appointment to both positions will not release the sureties. of the cashier, although the bond may have been executed when the subordinate was acting only in the one capacity. In March, 1865, Batchelor was acting as cashier, teller, and book-keeper, and as the business of the bank increased, a book-keeper was appointed, and Batchelor became cashier and teller, and finally Rehim was made teller and book-

keeper.   The right on the part of the bank or its directory
to appoint, control, and direct the labors of its subordinates,
subjecting their work to the supervision of the cashier, must
necessarily be implied from the character of such institu-
tions.   The position assigned a particular subordinate in the
bank may afford facilities for him to plunder his principal,
and render it more difficult to detect the fraud when perpe-
trated, still it does not increase the diligence required of the
cashier.   As the chief financial officer of the bank, the
cashier has certain duties to perform, and if the board of
directors have placed a subordinate in a position where he
can perpetrate a fraud by making false entries without being
detected, unless by the exercise of the highest degree of
diligence, the fault cannot be attributed to the cashier, unless
he has knowledge of the fact that such frauds are being
perpetrated.

Without discussing further the effect of the answer made
by the sureties, it will be conceded that any substantial
defense made by the cashier (their principal) must inure to
their benefit.   If no judgment could have been properly
rendered against Batchelor in the absence of proof, none
could have been rendered against the sureties; so it is im-
material whether the answer of the sureties constitutes a
defense or not.

It is alleged in the answer of Batchelor, "that whatever
money was abstracted from the bank was fraudulently taken
from the vault or office of the bank by Rehim—he having
at the time, with the consent of the plaintiff, taken posses-
sion of the same, without the knowledge or consent of the
defendant—and the fact that he, Rehim, had so fraudulently
taken said money of plaintiff, or that he contemplated doing
so, was so skillfully concealed from the defendant that he

could not discover the fact by any diligence whatever which it was possible for him to exercise, or which was consistént with the proper and faithful discharge of the duties imposed on him by the plaintiff, and which the plaintiff required him to discharge, and which was necessary for the best interests of the bank that he should discharge," &c. It is true it is also alleged that the first item evidencing the default of Rehim could have been discovered by the exercise of the slightest diligence on the part of the directors; still this single admission should not preclude the defense from tendering an issue that, if true, relieves him from all responsibility for the many defalcations of his subordinate.

To this answer the appellee filed a reply, in which it is alleged, in substance, "that the said Batchelor carelessly and negligently suffered and permitted, while the plaintiff's books and money were under his control and supervision, false entries to be made in the books to conceal from plaintiff the true amount of money in its bank," &c., causing the loss. This issue necessarily involves the character of diligence to be exercised by the cashier in supervising the affairs of the bank, including its money and all other resources, as well as the conduct of those under him.

A cashier, says Morse, is the chief executive financial officer of the bank. He has charge of its moneys, its securities, its valuable papers. He has the superintendence of its books of accounts. He must have his subordinates, whose offices will be offshoots of his own, but he will not be liable for the default of any of these subordinates, unless his own laches or collusion has caused or aided it. It is impossible for him to be omnipresent and omniscient among all the servants in the institution, and he is not liable for his failure to perform this impossibility. He is required only

to direct them properly in the performance of their several functions, and to exercise the most thorough supervision which is practicable, in view of the amount and method of conducting the routine of daily affairs in the office. (Morse on Banking, pages 142, 182.)

As stated in substance with reference to the defense made by the sureties, the cashier is not an insurer of the honesty and fidelity of those who occupy subordinate positions in the bank, and while it is his duty to supervise and control the affairs of the bank and its officers under him, in the discharge of their duties, he is required only to exercise that diligence in regard to the action of his subordinates consistent with the discharge of all his duties in connection with the bank, exercising that care and skill that is reasonable and practicable. He is not required to examine by actual inspection every original entry made by those under him, but his care extends to a general supervision of the books and affairs of the bank; and when it is shown that he has exercised such diligence as a prudent man would in the control of those under him and in the supervision of their work, he has discharged his duty. If the appointment of Rehim to the position of teller and book-keeper enabled him to accomplish his dishonest purposes with greater facility, it did not increase the diligence required of Batchelor, nor did it lessen the obligation he was under to the bank to protect its interests.

The question made as to the discharge in bankruptcy of Pepper from the payment of his liabilities cannot be determined from the facts before this court.

His discharge relieves him from all of his liabilities made provable against his estate which existed on the 24th of February, 1868. When the alleged breaches occurred can-

·not be definitely ascertained from the proof. If a breach of the bond occurred prior to the date of the discharge, viz: on the 24th of February, 1868, by which a liability could have been fixed as against the cashier and his sureties, his discharge should protect him from a judgment in this case. The question, however, must go back, to be tried with the other issues.

The judgment below is reversed, and the cause remanded, with directions to remand the case to the common pleas court for trial.