PEPPER, ET AL. *v*. PLANTERS' NATIONAL BANK OF LOUISVILLE.

[Kentucky Law Reporter, Vol. 5—85.]

**Liability and Duty of Cashier to the Bank.**
    The diligence required of a bank cashier is such only as a skilled and prudent cashier ordinarily bestows on the affairs of the bank, and such care must be the test by which his liability is to be determined; and where he is not guilty of negligence he is not liable to the bank for loss sustained by it by reason of the teller in such bank having abstracted money from the bank.

**Estoppel.**
    The facts that a bank through its board of directors appoints a committee whose duty it was to examine into the affairs of the bank, and whether or not the bank was in a solvent condition, and that this committee reported the condition of the bank all right do not work an estoppel against the bank in the attempt to make the cashier liable for a neglect of duty.

**Instructions.**
    In a suit by a bank to hold its cashier liable for the loss of money abstracted from the bank by the teller serving under the cashier, an instruction is erroneous and unfair when it makes prominent the testimony of the one side and omits to do so on the other.

**Opinion Evidence.**
    In a trial on a complaint seeking to hold its cashier liable for loss resulting from the dishonesty of the bank teller serving under such cashier, it is proper for bankers and experts in banking to fully explain, as witnesses, the duties of a bank cashier, but such witnesses may not give their opinions to the effect that the cashier under the facts stated was guilty of negligence. The jury are capable from the evidence to form their own conclusions as to the question of negligence.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

June 16, 1883.

OPINION BY JUDGE PRYOR:

This is the second appeal in the present case, and is an action in which the plaintiff, the Planters' Nat. Bank of Louisville, is seeking to make Batchelor, who was its cashier, and his sureties liable for large sums of money abstracted from the bank by the employés under Batchelor, the entire loss, so far as the present record shows, having been sustained by the dishonest conduct of one Rehm, who acted in the double capacity of teller and general bookkeeper for the bank. See *Batchelor v. Planters' Nat. Bank,* 78 Ky. 435.

In March, 1865, Batchelor was acting as cashier, teller and bookkeeper, and, the business of the bank increasing, Rehm was finally made both teller and bookkeeper. This relieved the cashier from some of the duties assigned him; and the fact that Rehm having been placed in a position by being made both teller and bookkeeper affording him (if dishonest) increased facilities for perpetrating his wrongs upon the bank, did not lessen the duties of the cashier or increase his diligence. If the subordinate was placed in a position where he could defraud the bank without being detected, unless by the exercise of the highest degree of diligence, the default is not that of the cashier, unless he has had knowledge of the fact that such frauds were being perpetrated. The cashier undertakes to supervise the action of his subordinates in their work in the bank in so far as is practicable with reference to the discharge of his other duties. The diligence required is such as a skilled and prudent cashier in such institutions ordinarily bestows on the affairs of the bank, and such care and diligence must be the test by which his liability is to be determined. The fact that the board of directors were required every three months to appoint a committee whose duty it was to examine into the affairs of the bank, count its cash, compare its assets and liabilities with the balance on the general ledger, and ascertain whether or not the bank was in a solvent condition, and that this committee reported the condition of the bank all right, does not work an estoppel against the bank in the attempt to make the cashier liable for a neglect of duty.

While the cashier is in most instances under the control of the directory, he is selected by them on account of his skill as a bank officer, and one to whom can be intrusted the supervisory power over the affairs of the bank; and, therefore, the failure of the bank directors or committee to ascertain the fraud is no excuse for the

cashier, if, by the exercise of ordinary care and diligence, such as was practicable in view of the proper discharge of all his duties to the bank, he could have prevented that fraud. But while evidence tending to show negligence on the part of the bank's committee in investigating the affairs of the bank constitutes no defense for the negligence, if any, of the cashier, many of the instructions given for the plaintiff were calculated to mislead the jury. The jury had been told in instruction No. 2 that the want of diligence on the part of the directors did not excuse Batchelor for neglecting his duties, and then the court proceeded in subsequent instructions to single out the negligence on the part of the directors that did not excuse. In instruction No. 3 the jury was told that the failure to take a bond from Rehm constituted no defense; in instruction No. 4, that the appointment of Rehm to the position of bookkeeper and teller did not lessen the obligation of Batchelor or increase his care; and again, in No. 12, that it is the right of the directors to assign to a subordinate more than one position in the bank, if, in their opinion, he could discharge such duties, and that this did not affect the question of liability on the part of the cashier or his sureties.

The singling out by separate instructions the several acts or omissions of duty on the part of the directors, and telling the jury that this and that did not excuse, conduced to call the attention of the jury from an essential element of the defense, viz., that the entire action of the board with reference to the duties the cashier was required to perform, and those of Rehm, made it impracticable for him, as cashier, to give to the work of his employé that attention that a cashier ordinarily would have given. The duties to be performed by Batchelor and to be discharged by Rehm may have been such as required of Batchelor the exercise of a greater degree of diligence than ordinarily pertains to one in his position; and while the directors had the right to assign to Rehm double positions in the bank, if that increased the supervisory power of the cashier over the subordinate to a greater extent than that ordinarily required of a cashier over those under him, or gave to Rehm such increased facilities for practicing his frauds as to enable him to avoid detection by the exercise of ordinary diligence on the part of Batchelor, then Batchelor and his sureties are not responsible.

The instructions referred to had the effect of taking from the jury the entire evidence for the defense conducing to show diligence, and

to create the liability notwithstanding the cashier did all that was required of him in such a position. The instruction had the effect to make prominent the testimony of the one side and omitted to do so on the other. This case having been heretofore in this court, the facts affecting the issue were fully discussed in an opinion then delivered; but the reasoning of a court embodied in an opinion should not always be given to a jury in the form of an instruction. The principle of law applicable to the case, and to such parts of it as the jury can not understand without being advised, should be embraced in an instruction; but isolated facts bearing on the main issue, made prominent by telling the jury they must or must not consider them, seldom fail to mislead.

The general instruction in regard to negligence having been given, and the jury told that the negligence of the directors did not relieve the cashier from discharging his duty, the jury must have understood the issue. The court, having in several instructions made prominent evidence for the plaintiff conducing to the recovery, might with the same propriety have said to the jury for the defendants that the failure of the bank committee to ascertain the fraud, and their several reports as to the condition of the bank, should be considered as evidence showing diligence on the part of the cashier, all of which would have been misleading. While negligence on the part of the directors affords no excuse, diligence on their part may evidence an absence of negligence on the part of Batchelor. Such deductions counsel may present to the jury in their argument, but they should not find their way into an instruction.

Instructions 5 and 6 are both objectionable. The jury was told in each instruction that if the negligence or want of care caused the loss to the bank, or aided such defaults, the defendants are liable. What constitutes aiding such defaults is not easily determined from the instructions or from the facts of the record. If it is meant that if Batchelor participated in the fraud, and the defendants are liable, the jury should have been so told, and, therefore, so much of the two instructions as left the jury to determine the character of the aid afforded by Batchelor to the employé under him, by which the latter was enabled to practice the fraud, should have been refused. The eleventh instruction in regard to the duty of Batchelor to make a report of the actual condition of the bank to the comptroller of the currency raised a side issue between the comptroller and Batchelor

that shed no light on the question of negligence in this case. The tenth instruction asked in reference to the demand had been hereto-fore decided adverse to the appellants, and was properly refused.

The fact of Rehm having defrauded the bank and abstracted the money seems to be conceded. The issue in this case is plain and simple. It was the duty of Batchelor to exercise such skill and prudence in supervising the action of his employé as is ordinarily bestowed by such officers in supervising the work of those under them, and if Batchelor failed to exercise that diligence in regard to the action of his subordinates as was consistent and practicable with the proper discharge of all his duties in connection with the bank, the defendants are responsible; and if the converse of the proposition be true, no liability exists. This being the law of the case, instruction No. 1 for the plaintiff should be so extended as to define the sort of diligence required of the cashier. As it is presented the jury is told that if the loss was from the want of care on the part of Batchelor the defendants are liable; whether slight care, ordinary care or great care the jury is not told; and while this is contained in other instructions, this instruction, if given, should embody the law as to the diligence required.

It is proper to consider the competency of what is termed the expert testimony in the case. Certain witnesses were summoned as bank experts, and were permitted to give their opinions to the effect that the cashier was guilty of negligence. It was important that the court and jury should have been informed as to the duties required of a bank cashier, embracing not only his supervision of the work done by those under him, but all his other duties connected with the bank. The daily routine of the business connected with such a bank may have been unknown to the judge presiding or to the jury, and to enlighten the jury as to the character of duties and the labor to be performed no witness could be more competent than one familiar with the labor and duties of a cashier in similar institutions, and to this extent the witnesses were entitled to speak. Such facts must be shown in order that the jury may determine intelligently the issue made. When in possession of these facts, and then ascertaining from the testimony the character and manner of the fraud practiced by the subordinate, the juror must be allowed to say, and not the witness, whether the loss sustained by the bank resulted from a want of diligence on the part of the cashier. The witnesses were not in fact

experts, but state facts from which conclusions may be reached by the court and jury, and this is no reason why the ordinary mind should not be able, after hearing the testimony, to determine the question of negligence. The expert, says Wharton, is introduced, and testifies to conditions that can not be verified by the tribunal trying the case. One unacquainted with questions of science and skill is incapable often of forming a logical conclusion from scientific facts, and in this class of cases the expert is resorted to for his opinion or conclusion, and the text-books restrict this rule by saying: "In all matters as to which the lay mind is capable of forming a conclusion; and as to all matters of free logical inference from scientific facts," the expert can not give his own conclusion from the facts. (1 Wharton's Evidence [2d ed.], § 436.) There is no reason why the juror can not reach a logical conclusion in this case when hearing the testimony on both sides of the issue made, and when the witness is permitted to state that the cashier has been guilty of negligence from the facts proved, or from a supposed state of facts, he is in effect deciding the law of the case for the court, and the issue of the fact for the jury. The opinions of witnesses, therefore, that certain acts were done by a cashier, or omitted to be done, constituting negligence, should have been excluded from the jury, and for the errors in admitting this testimony, as well as the other errors indicated in the opinion judgment below is *reversed* and cause remanded, with directions to award a new trial, and for proceedings consistent with this opinion.

*Wm. Lindsay, John M. Brown, James Harlan, Alvin Duvall, J. & J. W. Rodman, J. B. Kinkead, for appellants.*

*Goodloe & Roberts, Russell & Helm, for appellee.*