Andrews, J.
—The demurrer admits the allegation of the complaint that the defendant, Mary E. Grindlay, had no insurable interest in the plaintiff’s life, and the policy seems, therefore, to come within the description of what are known as “ wager-policies.”
It does not follow, however, that the plaintiff is entitled to the relief which he seeks. He was twenty-two years old when the policy was taken out, and appeared at the office of the company and submitted to a physical examination, for the purpose of enabling the company to decide whether it would issue the policy.
*20 The policy was issued and accepted, with his consent, and premiums have been paid thereon for over twenty-three years, and after the insurance company, the brother and sister have acted for that long period in reliance upon such consent, the plaintiff is estopped, and cannot be heard in a court of equity to say he did not originally consent.
The proposition of the plaintiff to pay his sister the premiums she has paid the company—such premiums having been paid by her father to May 1, 1879 —and the cash value of the policy, to extent of whatever,interest, if any, she may have in the policy, is so worded as to leave it somewhat doubtful how much he offers to pay her.*
But even if he offered to place the company and his sister in the same position they would have been had the policy not been issued, I do not think he could be permitted to withdraw such consent now, against their wishes, after they have acted upon it for so many years, merely because his sister has become unfriendly to him since the policy was issued.
Aside, however, from the objection that the plaint-tiff is estopped by his own consent, I do not see how a court of equity can afford him the relief asked for.
He . complains, in substance, that the insurance company and his sister have a wager dependent upon the duration of his life, and that his sister is hostile *21 to him, and the demurrer admits the truth of these allegations.
The plaintiff does not allege in Ms complaint that his life is in danger at the hands of his sister, but his counsel claims that all wager-policies upon the lives of third parties are void, because, among other reasons, the person holding the policy has a strong inducement to cause the death of the individual whose life is insured.
If the policy upon the plaintiff’s life is void, there is no occasion for a judgment directing its surrender and cancellation. If it is a valid contract, I do not think the apprehensions of the plaintiff, even if he really thinks that he has cause for the same, furnish any ground for the interference of a court of equity. Fo precedent for such interference is cited, nor have I been able to find any, nor do I think, upon principle, that the jurisdiction of the court can be held to cover such a case.
The demurrer to the complaint is therefore sustained.
Rote on the Rights of a Benbficiaby in a Policy of Life Insubance.
In determining what are the rights of one in whose favor another has caused life insurance to be made, as a voluntary benefit, the first inquiry is for the language of the policy ; the second, for the provisions of the charter or the general statute, if any, bearing on such policies ; the next, for the relationship of the parties, both at the time when the policy was taken out and at the time when the death occurred and the controversy arose ; the next, for all that has taken place between the beneficiary and the one who intended to confer the benefit, relating to the subject. Lastly, in some cases, the rights of creditors claim attention.
These questions are frequently complicated by the further question as to the law of what place applies, arising out of *22 the fact that the policy was issued by a company in one State , and received by the insured in another, and that the result may differ according as the law of the place of the corporation, or that of the consummation of the contract, or that of the personal status of a wife, &c., is to control.
The following presentation of recent authorities will give the reader both sides of the question which has so much divided the opinion of the American courts ; and a convenient clue to the peculiar application of the question to mutual benefit society insurance.
The cases are here arranged in the following classes :
I. Cases favoring the claim of the beneficiary.
II. Cases favoring the claim of the person taking out the policy.
III. Cases on the meaning of words of consanguinity or affinity used in designating a beneficiary ; and on the effect of divorce.
IV. Benevolent society cases.
I. Gases favoring the claim of the beneficiary.
Law of New York, 1840, Chap. 80, p. 59.
C — It shall be lawful for any married woman, by herself and, in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum, or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars.
§ 2. In case of the death of the wife before the decease of her husband, the amount of the insurance may be made payable after her death to her children for their use, and to their guardian, if under age.
(1.) Eadie v. Slimmon, 26 N.Y. 9. N.Y. Ct. of App., Dec., 1862. Denio, J.
Policy issued in name of wife—premiums to be paid by her—on life of husband, “for the sole use and benefit of the said ” wife, the company agreeing with her, “ her executors, administrators and assigns,” to pay to her, her personal representatives or assigns, “for her sole use; or in case of her death before her husband to her chil *23 dren.” An assignment of the policy was made by her and her husband, under threats of criminal prosecution of the husband, to one S., a creditor of the husband.
Action against insuring company, which paid the money into court, leaving the contest between the widow and S.
The court held the assignment void as having been made under duress, and also decided that under the law of 1840, respecting insurance in favor of a wife, a married woman had no power to assign a policy taken out for her benefit on the life of her husband.
“ It would be a violation of the spirit of the provision to hold that a wife, insured under this act, could sell or trafile with her policy as though it were realized personal property or an ordinary security for money.”
Mo authorities are cited in the opinion.
The decision was confirmed in Barry v. Equitable Life Ass. Soc. (2), below; Wilson v. Lawrence (4), below; Brummer v. Cohn, 58 How. Pr. 239; and is frequently cited.
(2.) Barry v. Equitable Life Ass. Soc., 59 N. Y. 587, Folger, J,
Action by widow to determine conflicting claims of herself and B. to insurance on life of her husband.
Policy on life of husband in conformity with statute concerning wives’ policies, payable to Ms wife for her sole use, if living, if not, to her children.
Under duress the wife executed assignment in blank, which was filled as a transfer to B. who had advanced money to the husband.
Held, that the assignment was void as having been been made under duress, and also that, under the decision in Eadie a. Slimmon(l), above, which was stated at length and affirmed, a wife could not “ sell or traffic with her policy as though it were realized personal property or an ordinary security for money.” ,
(3.) Barry v. Brune, 71 N. Y. 261. Earl, J.
Action by widow to determine right to policies.
Policies on life of husband in favor of wife, who, under duress oí her husband, executed an assignment in blank, which was afterwards filled up by the husband by inserting the name of B., his creditor, as assignee. B. and the husband then agreed with the agent of the company, without the wife’s knowledge, that the policies should be allowed to lapse and new ones issued, payable to B., which was done, the new policies being like the old excepting that they were payable to B., and that the premiums were to be paid in semi-annual installments instead of annually. Upon the death of the insured, B.’s *24 assignee sued the company iníAMyland, the widow not being a party to the suit, and obtained judgment.
The court held, following Barry v. Equitable Life Ass. Soc., 50 N. Y. 587 (2), above, between the same parties, that the assignment was wholly invalid. Also that B., having no title to or interest in the policies, could not cancel, surrender or impair them; that the substituted policies simply, in equity, took the place of the old ones, and that the money payable on them must go to the party entitled under the old policies.
Citing Nesbitt v. Berridge. 10 Jurist, N. S. 53; Norwood v. Guerdon, 60 Ill. 253; Chapin v. Fellowes (18), below; Lemon v. Phoenix Life Ins. Co. (21), below; Dutton v. Willner, 52 N. Y. 312; Mitchell v. Reed, 61 Id. 123.
Brinton v. Lulham, 33 Weekly Rep. 788; S. C., 51 L. T. R. N. S. 564.
Where a husband w’ho had settled a leasehold on his life, obtained a renewal of the lease in' his own name, intending to give her the benefit of the renewal,—Held, that he was a trustee thereof for her, so ' that the lack of a writing "tó "satisfy -the statute of frauds did not affect her claim; and that; She 'was not bound to reimburse to his estate the premium he'paid for the renewal.
(4.) Wilson v. Lawrence,76 N. Y. 585; aff’g 13 Hun, 238.
Action between wife and assigriee'óf policy.
Policy on husband’s life payable to his wife was assigned by the wife.
The court adhered to its decisions in Eadie v. Slimmou (1), above.; Barry v. Brune (3), above.
(5.) Olmstead v. Keyes, 85 N. Y. 593; S. C., 11 Ins. L. J. 55. Earl, J.
Action by trustee to determine conflicting claims. An insurance company issued a policy on the life of K. to O. as trustee for the wife of K. The premiums to be paid by the trustee.
K. paid all the premiums out of his own moneys. The wife died leaving children, before K., who afterwards married again ; and subsequently, by the direction of K., the trustee, O., for value received, assigned all his interest, as such trustee, to the second wife of K., and due notice was given to the insuring company.
“The rule, as gathered from these authorities, is, that where one takes out a policy upon his own life as an honest and bona fide transaction, and the amount insured is made payable to a person having no interest in the life, or-where.such a policy is assigned to one having no interest in the life, the beneficiary in the one case and the *25 assignee in the other, may hold and enforce the policy if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming, and wagering policies. It follows, therefore, that one may, with the consent of the insurer, deal with a valid life policy as he could with any other chose in action—selling it, assigning it, disposing of it, and bequeathing it by will, and it has been well said that if he could not do this life policies would be deprived of a large share of their utility and value.” .....
“ But for the statutes it cannot be doubted that during the life-of Huldah (the first wife), the sole beneficiary named in the policy, she could have made a valid assignment of her interest thereinto any person and she could have disposed of it by will.”
(Eadie v. Slimmon (1), above, was reviewed.)
In this case no mention was made in the policy of the children or representatives of the first wife, she alone being the beneficiary; and the decision rests on the principle that, the policy being a chose in action, the first wife’s interest in it “ went where her other dioses in action, if she had any, went,” namely, to the surviving husband, who was thereby empowered to dispose of it as he chose.
L. 1840, c. 80, relating to wives’ policies, and amendments, does not affect this decision.
(6.) Whitehead v. N. Y. Life Ins. Co., 63 How. Pr. 394; N. Y. Super. Ct., 1882. Van Vorst, J.
I), insured his life for the benefit of his wife and children. His wife dying before him, he surrendered the policies, signing as guardian for the children, all but one of whom were then of age, and who were ignorant of the transaction. The children, upon his death, sued the company.
Held, that upon the death of the wife the interest in the policies was wholly in the children, and that D. had no power to represent them in the surrender.
“ The rights of the children to the moneys payable upon their father’s death, could not be surrendered by their father without their consent. The premiums theretofore paid had fastened these rights under the policy.” Citing Barry v. Brune (3), above; Eadie v. Slimmon (1), above; Applegate v. Fraternal Ins. Co., 7 Ohio St. 292; Pilcher v. N. Y. Life Ins. Co. (36), below.
The act for the relief of policy-holders in life insurance companies (L. 1879, c. 248), is as follows:
“ Section 1. All policies of insurance heretofore or hereafter issued within the State of New York upon the lives of husbands for *26 the benefit and use of their wives, in pursuance of the laws of the State, shall be, from and after the passage of this act, assignable by said wife with the written consent of her husband; or in case of her death, by her legal representatives, with the written consent of her husband, to any person whomsoever, or be surrendered to the company issuing such policy, with the written consent of the husband.
11 Section 3. This act shall take effect immediately.”
According to the New York rule, the assignee need, not have an insurable interest. St. John v. Am. Mutual Life Ins. Co., 13 N. Y. 31. Contra, Warnock v. Davis, 104 U. S. 775; S. C., 11 Ins. L. J. 459; Missouri Valley Ins. Co. v. Sturges, 18 Kans. 93; S. C., 26 Am. R. 761; Pepper v. Planter’s Nat. Bk. of Louisville (Ky., June, 1883), 5 Ky. Law Rep. 85.
(7.) Warnock v. Davis, 104 U. S. 775; S. C., 11 Ins. L. J. 459; U. S. Supm. Ct., Oct., 1881. Field, J.
Plaintiff’s intestate took out insurance upon his own life, and agreed to assign nine-tenths of it to the S. T. Association, reserving one-tenth to be disposed of as he might thereafter direct; the association agreeing to pay all dues, fees, etc., necessary to maintain the insurance at its exclusive expense.
Subsequently he duly assigned the policy and its proceeds to said association, except one-tenth, which he directed should be paid to his wife, and constituted the association his attorney, to collect the sum due on said policy at the time of his death, and apply it as thus agreed.
In an action by his administrator against the association for the nine-tenths (the whole having been paid to it by the insuring company, and the one-tenth having been by it applied as directed), it was held that the association, not having an insurable interest in the life of the deceased beyond what it might have paid for premiums or advanced on the security of the policy, it could acquire no valid title, by assignment., to any greater extent.
This decision takes the ground that, inasmuch as a valid policy of life insurance cannot be issued in favor of one, as beneficiary, who has no insurable interest, or for any sum greater than the pecuniary obligation for which it may be security, the parties can be put in no better position by the assignment of a policy originally valid.
• It is in direct conflict with the New York cases which are referred to.
In Massachusetts, since 1844, a statute provides, that a policy “ expressed to be for the benefit of any married woman, whether procured by herself, her husband, or any other person, shall inure to her separate use and benefit, and that of her children, independently of *27 her husband or his creditors, or the person effecting the same or Ms creditors.”
(8.) In Gould v. Emerson, 99 Mass. 154, it was held that the husband (assured) “ could not affect, by his will, the construction of the policy, or the distribution of the proceeds thereof.”
(9.) In Knickerbocker Life Ins. Co. v. Weitz, 99 Mass. 157, that a wife who had insured her husband’s life for her own benefit, and for her child’s in case she died before her husband, could not assign the policy to a creditor of her husband, so as to affect the interest of the child.
(10.) In Swan v. Snow, 93 Mass. 224, that neither the husband nor his administratrix can claim any property in a policy taken out by his wife upon his life, payable to her or her executors administrators, or assigns, she dying before him leaving children, and he paying the premiums after her death.
(11.) In Burroughs v. Mut. Life Ass. Co., 97 Mass. 359, that the assignee of a policy, payable to the assured, his executors, administrators and assigns, may maintain an action at law against the insurers, although the policy is expressed to be for the use of the wife and children of assured, and if he recovers he will hold the proceeds, so far as they inure to the benefit of the child of the assured, in trust for him.
(12.) In Winchester v. Stebbins, 82 Mass. 52, that where a policy was payable to the assured, his executors, administrators and assigns, and was subsequently assigned by the assured, and, having lapsed for non-payment of premiums, was assigned to a brother of the wife of the assured, and was renewed for her benefit by consent of assured and insurers, and the money was paid to the brother at maturity, the administrator of the assured could not maintain an action against him for the money.
(13.) In Unity Mut. Life Assoc. v. Dugan, 118 Mass. 219, that a policy issued to a husband for the sole use of his wife, could not be assigned by him to a creditor, with the insurer’s consent, even though he retained possession of it until two days before his death, when he delivered it to the assignee.
(14.) In Norris v. Mass. Mut. Life Ins. Co., 131 Mass. 294, that a policy for the benefit of the wife of the assured is her separate property, and liable in law for the payment of her debts; during her lifetime the children have no title as against her or her creditors; after her death, any interest not disposed of by her, or not needed to pay her debts, inures to her children.
*28 (15.) In Troy v. Sargent, 132 Mass. 408, that a policy for the benefit of a wife may be attached by her creditor, during the life of her husband (the insured), and the children need not be made parties defendant.
(10.) Pomeroy v. Manhattan Life Ins. Co., 40 Ill. 398. Walker, Ch. J. Bill of interpleader.
Part of a policy on the life of the husband for the benefit of his wife, and delivered to her, was assigned, during coverture, by the wife to a creditor of the husband.
Meld, that while it could not be assigned at common law, or under the Illinois statute concerning married women, so as to pass the legal title, there was such an assignment as will be protected in equity; it being the wife’s sole and separate property, it was at her disposal, and under her control. No authorities cited.
(17.) Conn. Mut. Life Ins. Co. v. Burroughs, 34 Conn. 305. Carpenter, J.
Bill of interpleader to compel respondents to contest among themselves for money payable on a policy.
Policy issued on the life of K., payable to his wife, “her executors, administrators or assigns for her sole use,” or íl case of her previous death, to their children or their guardian. The wife by an instrument in due form, assigned the policy to creditors of her husband. She having died before her husband, the claimants of the money payable on the death of K. were the creditors claiming under the assignment; the guardian of the only child of K. and his wife; and the administrator of the wife’s estate.
The court held that the interest of the wife was not assignable, the policy being intended to be within the statute concerning wives’ policies in Connecticut. The policy being payable according to the requirements of the statute, and “the contract relations between the company and the children having thereby become fixed, it was not in her power to defeat the purpose of the legislature in respect to the children, and the manifest intention of the parties to the contract, by an assignment of the policy during the life of the husband.” Citing Radie v. Slimmon (1), above.
(18.) Chapin v. Fellowes, 36 Conn. 132. Hinman, Ch. J.
Policy on the life of the husband on the application of his wife, payable to her for her sole use, and in case of her death before her husband’s, to be paid to her children. She died before him, leaving children. He then surrendered the policy, and received one in all «respects similar to the first, except that it was payable to him. The *29 money was paid to his administrator and was claimed by the children.
The court cited Conn. Mut. Life Ins. Co. v. Burroughs (17), above, and held that the husband “ had no power to make any such substitution, and we think a court of equity ought to treat the substituted policy as in fact belonging to the children, and the premiums paid upon it as paid under those provisions of the charter and of the statute which authorize a husband to insure his own life for the benefit of his wife and children."
(19.) Matter of Kugler, 23 La. Ann. 455. Ludeling, Ch. J.
Appeal from judgment confirming final account of administrator, who now asks that the widow and minors be allowed §1,000 under homestead law. Life of husband was insured for benefit of his wife and children, and proceeds paid to others after his death.
The court said: “ We think the rights of the widow and children to the policy existed before the death, and that the liability of the insurance company became fixed and exigible by the death of the insured, and therefore, the widow and children owned, in their own right, §1,000 when K. died.” No authorities are cited.
In Matter of Hearing (27), below, the same judge, in a dissenting opinion, referring to the above case, said: 6‘The only question was whether the widow aud children could claim §1,000 of the succession besides the insurance money.”
The conclusion of the principal opinion is followed in Matter of Clark, 27 La. Ann. 269, and Matter of Bofenschen, 29 Id. 711.
(20.) Landrum v. Knowles, 22 N. J. Eq. 594. Beasley, Ch. J.
Bill in equity.
A wife insured the life of her husband for the sole use of their children, payable to the assured or their assigns. Subsequently, with the consent of her husband, she assigned the policy to K. in payment of a debt due from her husband, and the assignee paid the later premiums.
The court affirmed the decree of the chancellor that the cash value of the policy, at the time it ceased to be kept alive by the mother or her husband, should be paid to the children, and the balance to the assignee, holding that the gift to the child ren^thougli-wohmtaity^was completely executed, but, inasmuch as she had made no contract with tEem to keep up the policy, the interest in the insurance actually conveyed to them was restricted by the number of premiums she had in fact paid : while K., having kept it alive for his own benefit, had acquired an interest in it for a valuable consideration.
Much stress was laid on Fortescue v. Barnett, 3 Milne & Keene, 36.
*30 (21.) Lemon v. Phoenix Mut. Ins. Co., 38 Conn. 294,
Bill in equity brought by L. to compel payment of a policy in terms payable to another.
P. took out an endowment policy payable to himself. He then surrendered it and had a similar policy issued in favor of L., to whom lie was engaged in marriage. At the request of L., and by P.’s direction, this policy was delivered to the brother of L. Afterward, P. requested L.’s brother to forward the policy to a friend, which being done, he surrendered the policy and obtained a third policy in favor of his (P.’s) own brother, to whom he was indebted. This last transaction was without the knowledge of L. or her brother.
Seymour, J.—“It is not claimed that the fact of making the policy payable to L., without more, vested in her a complete title. It is conceded that, so long as P. retained it in his own possession, he might control it as his own. On the other hand, it is not doubted that if P. delivered it to L. as a gift to her, such delivery would vest in her a complete title.
“ In view of all the facts in the case, we think we must find that there was an executed gift of the policy to L., and that the delivery to her brother was as a depositary for her.”
No cases are cited in the opinion.
(22.) Baker v. Young, 47 Mo. 453. Wagner, J.
A policy on husband’s life payable to his wife, was assigned by joint act of the husband and wife to a creditor of the husband. The husband was duly appointed trustee for his wife and children, and sues for the recovery of the policy, claiming that the assignment was void.
The court decided that, under a statute providing that a policy expressed to be for the benefit of a married woman, shall inure to her separate use and benefit and that of her husband, applies simply to the manner of the descent- and distribution ; and that,' while the statute allows her to retain and appropriate the insurance, if she sees fit, discharged from all claims of her husband or bis creditors, it was not the intention of the legislature to impose upon her any disability or restraint from alienation when her act is free and voluntary.
Citing Charter Oak Life Ins. Co. v. Brant (23), below, and distinguishing Eadie v. Slimmon (1), above.
(23.) Charter Oak Life Ins. Co. v. Brant, 47 Mo. 419. Wagner, J.
Proceeding in nature of bill of interpleader.
The statute concerning wives’ policies provided that such exemption shall not apply when the amount of the annual premium should exceed §300.
*31 Policy on life of husband, the. annual premium being $343.10, payable to the sole and separate use of the wife. The wife and husband joined in an assignment to S., the creditor of the husband. S. and the wife claimed proceeds.
The opinion cites Kerman Howard (51), below, and Eadie v. Slimmon (1), above, decided under similar statutes, but holds that the policy in question does not come within the statute, because the premium to be paid is more than $300 per annum, and says : “ As a policy not governed by the statutes, I entertain no doubt about its transferability; and the assignment having been voluntarily made by the wife and husband for a valuable consideration, with the assent of the company, I think it should be held valid.”
(24.) Emerick v. Coakley, 35 Md. 188. Grason, J.
Bill of interpleader.
A policy issued upon the life of a husband for the sole and separate use of the wife was assigned by their joint act to secure a debt of the husband. The widow and the assignees claimed the money.
The court held that under the statute of Maryland, which is similar to that of New York, the policy was the wife’s sole and separate property, and could be assigned by her for her husband’s debt.
Eadie v. Slimmon (1), above, was stated and dissented from, and Pomeroy v. Manhattan Life Ins. Co. (16), above, was reviewed and approved.
(25.) Gambs v. Covenant Mut. Life Ins. Co., 50 Mo. 44. Bliss, J.
Policy on husband’s life, payable to her or her legal representatives. The wife died and he, having remarried, procured a memorandum upon the policy that it should stand for the benefit of his second wife and others named. On his death, the first wife’s administrator claimed the money. The policy issued and first wife died before the adoption of the statute authorizing policies for separate use of wives.
Meld, that, at common law, the wife had an insurable interest in her husband’s life only because of her dependence upon him for support, and that her interest ceased with her death before that of her husband.
The right of the husband, after the wife's death, to dispose of a policy obtained by him for her benefit is declared—the court citing and approving Kerman v. Howard (51), below.
*32 (26). De Rouge v. Elliott, 8 N. J. Eq. 486. Dold, V. C.
Motion to dissolve injunction.
Policy on life of De Rouge, payable to his wife, and, in case of her death before his, to their children. It was assigned to E. by act of the husband and wife for payment of the husband’s debt. The wife enjoined the company from paying the proceeds to E.
Held, that, under the charter of the company and the statute relating to wives’ policies, the reversionary interest secured to the wife by such a policy is her sole and separate property, and may be assigned by her, and it is not material that such interest is contingent on her surviving her husband. In that case, the assignee would take it—otherwise the children surviving the husband.
That the fund was created for the special purpose of providing for the widow and children after the husband’s death does not invalidate an assignment to secure his debt.
Reviewing Eadie v. Slimmon (1), above; Trenton Mut. Life Ins. Co. v. Johnson, 4 Zab. 576 ; Conn. Mut. Life Ins. Co. v. Burroughs (17), above; Knickerbocker Life Ins. Co. v. Weitz (9), above; Pomeroy v. Manhattan Life Ins. Co. (16), above; Emerick v. Coakley (24), above.
(27.) Matter of Hearing, 36 La. Ann. 326. Morgan, J.
Action to compel a widow to place on the inventory of her husband’s estate several policies of insurance.
The policies were issued on the life of the husband in favor of the wife and wife and child, or were transferred to them. One of them was upon the life of a stranger and assigned by the assured to the husband, who transferred it to the wife. The premiums on policies not issued in her favor were paid by the wife.
Held, that a policy is not property, but a contract to pay money on the happening of a certain event to the person named in it or its legal holder, and that when the event happens the money belongs to the beneficiary or holder. The opinion makes no reference to the policy on the life of the stranger. No cases cited.
A dissenting opinion by Ludeling, Ch. J., proceeds upon the theory that policies of insurance in favor of a wife are community property under Louisiana law.
(28.) Continental Life Ins. Co. v. Palmer, 42 Conn. 60. Carpenter, J.
The court decided that the interest of a child under a policy on the life of a husband, payable to a wife, or, in case of her prior death, to her children, is transmissible by descent, the child of a deceased child being entitled to the share of its parent.
*33 (29.) Hutson v. Merrifield, 51 Ind. 24. Downey, J.
Action between administrators of husband and of wife.
A policy issued on the life of the husband, payable to his wife, her executors, administrators and assigns, and in case of her prior death to her children. There were no children. The wife died first, leaving as heirs, her parents, brothers and sisters. The husband, dying, soon after, left a father, and brothers, and sisters. No wives1 policies statutcJit Jorce. Held, that the wife- “ had such an interest in and ownership of the policy, and such a right to the proceeds as would, on her death, descend to her heirs, and that this is so, notwithstanding the person insured was yet living. If the policy is a chose in action, it is personal property, which, at the death of the party holding and owning it, would vest in the heirs of such person, subject to the payment of debts. That the amount of the policy is not payable until the death of the life insured can make no difference.”
The decision rests upon the right of the wife to assign the policy in law (as well as by its terms), on which point it cites Bliss Life Ins. 506; St. John v. Am. Mut. Life Ins. Co., 13 N. Y. 31; aff’g 2 Duer, 419; Palmer v. Merrill, 6 Cush. 282; Ashley v. Ashley, 3 Simons, 149.
(30.) Matter of Deginther, 83 Pa. St. 337. Sharswood, J.
Proceeding to determine distribution.
A wife - took out a policy on her husband’s life, payable to- her, her executors, administrators or assigns, and died intestate before her husbmd, leaving children.
Held, that the husband’s representation was entitled to a share according to the statute of distributions.
(31.) Pence v. Makepeace, 65 Ind. 345. Hawk, J.
Bill of interpleader.
A policy on the life of a husband payable to his wife was assigned, ostensibly, by their joint act in due form to a creditor of the husband who had possession of it and paid subsequent premiums. The wife denied making and delivering the assignment, and-a jury found in her favor.
Held, approving an instruction given below, that a policy payable to a wife vested in her alone the absolute ownership of it, and could not be assigned or transferred to any one, by her husband or any other person, without her authority; and that an assignment or delivery of it by the husband, without her authority, would not bind her in any respect.
(32.) Ricker v. Charter Oak Life Ins. Co., 27 Minn. 193; Sept. 34, 1880. Cornell, J.
S. insured his life for $3,000 by a policy payable to his wife, if *34 living at the time of his death, otherwise to his children, or to their guardians, if minors. The wife died before him, and before her death all the premiums which constituted the consideration of the policy had been paid. S. married for his second wife L., the intervener in this case, by whom he had one child. After his second marriage, he surrendered the policy to the insuring company, without the consent of his children by his first wife, and took out a paid-up policy corresponding to the original in date and terms, but being payable to L., his second wife, for her “sole and separate use and benefit.”
The children of the first wife claimed the proceeds of the policy.
The court held “that the transaction on the part of S. was in the nature of an irrevocable and executed voluntary settlement upon his wife and children, conditioned that the same should be paid to her for her benefit if she survived him; but if not, then the same should be paid to his .children, or if minors, to their guardian, for their sole use and benefit.”
And that in paying for the insurance and procuring the policy to be so issued “ without any condition or stipulation reserving a right to change or alter any of the terms of the agreement, he did all that could well be done under the circumstances, in the execution of an intention to vest in his said appointees the entire interest in the policy and all rights thereunder.” Citing Adams v. Brackett, 5 Metc. (Mass.) 280, and Landrum v. Knowles (20), above. The court further said: “Taking the delivery of the policy from the company, under these circumstances, can only be construed as an act of acceptance for the designated beneficiaries, and his subsequent holding of the same as that of a naked depositary, without any interest, for those entitled thereto.”
(33.) Matter of Malone (Penn. 1880), 9 Ins. Law J. 767. Penrose, J.
A., being unmarried, took out insurance upon his life. After marriage, and while solvent, he verbally gave the policy to his wife, but kept it in a safe belonging to his firm. When the firm became embarrassed Its creditors granted an extension, he representing that lie owned the policy. After his death, thejSrm and the widow claimed the money.
Held, that the gift to the wife was valid though not evidenced by writing. “If a valid gift was made, it is of no importance, as between husband wife, that the former became the custodian. In such case, he holds as trustee without the right to divest his wife’s ownership.”
Citing Matter of Hamill, 86 Pa. St. 363.
*35 (34.) Godfrey v. Wilson, 70 Ind. 50. Hawk, J.
Action by widow against insurance company and claimants of money under assignment.
W. insured his life, the policy being made payable to his wife. He paid all premiums. "By an. instrument executed by both W. and his wife, the “ right, title and interest ” of the wife in the policy was assigned to G. & 0. to secure payment of money loaned and paid to the wife “ to enable her to pay for and improve” certain real estate. It contained a promise to repay the loan with interest.
To the suit of the widow, G. & 0. filed a cross-complaint, by which they claimed to be the exclusive owners of the policy and its proceeds by virtue of the assignment and promise, to which the widow .pleaded coverture.
The court held that coverture was a complete defense to the cross-complaint, the executory contract for the repayment of the loan being absolutely void; and said: “ It is certain that, in the absence of a valid contract of assignment, executed to them by the beneficiary named in the policy of insurance, upon a sufficient and legal consideration, the appellants (G. & C.) did not have any legal title or claim either to the policy or its proceedsand that the contract executed by W. and his wife to them was invalid and void, and gave them no title to the policy or claim upon the proceeds.
(35.) Allis v. Ware, 28 Minn. 166; S. C., 9 Northw. Rep. 666, following Ricker v. Charter Oak Life Ins. Co. (32), above.
“ The doctrine of which (the Ricker) case is that a policy of the kind mentioned in this appeal belongs, the moment it is issued, to the beneficiaries named therein; that the life insured has no legal or equitable interest in it; that if it 1ms been delivered to and is held by him, he holds it as a valid deposit, and that therefore he cannot assign or transfer it for any purpose in pledge or otherwise.”
(36.) Pilcher v. N. Y. Life Ins. Co., 33 La. Ann. 322. Levy, J. on rehearing, Fenner, J.
Policy issued on husband’s life for the use of the wife, she being named as beneficiary. By agreement between the husband and the company, and without the knowledge of the wife, it was allowed to lapse, and a new one was issued, naming the heirs and assigns of the husband as beneficiaries. This policy by various assignments was held by a bank at the time the husband died. Both the-wife and the bank sued the company, and the suits being consolidated the money was paid imto court to await its decision as to its ownership.
Held, that the right to the first policy vested in the wife as beneficiary, and that she could not be divested of that right without her *36 consent, by the husband or the insurer, except by failure to comply with the requirements of the policy, affirming the doctrine of the previous cases of Matter of Kugler (19), above; Matter of Hearing (27), above; Matter of Clark, 27 La. Ann. 269; Matter of Bofenschen, 29 La. Ann. 714.
Held, also, that the second policy was not, as to the wife, a new policy, but merely a continuation of the old one.
Citing and approving Lemon v. Phoenix Mut. Life Ins. Co., 38 Conn. 294; Chapin v. Fellowes (18), above; Barry v. Brune (3), above; Dutton v. Willner, 52 N. Y. 312.
On rehearing, reference was made to Landrum v. Knowles (20), above; and the court said of the case in hand, “ We hold that the right of the beneficiary wife in the policy could only be terminated by its lapse. We hold it never lapsed.”
(37.) Brockhaus v. Kemna, 10 Bissell, 338; U. S. Circ. Ct., Wisconsin, May, 1881. Dyer, J.
Action by a father to enjoin his daughter’s action on his bond as guardian for her.
B., to provide for his minor children, insured his life by three endowment policies, each for $2,000; one payable to Clara when he should be sixty years of age; one to Alma when he should be fifty, and one to Laura when he should be fifty-five. Becoming unable to pay the premiums, it was agreed at a family council—the children being still minors—that the policies should be surrendered for paid-up policies, and (because the sums in the paid up policies would vary in amount as more or less premiums had been paid on them),—that the proceeds, when paid, should be received and invested by the mother for the benefit of the children in equal shares. Paid-up policies were then obtained in place of the originals, and payable in the same manner. Subsequently, the agreement respecting the disposition of the proceeds, when paid, was reduced to writing and executed by B. and his three children, and delivered to the mother. All the original and paid-up policies were retained by B. in his possession. The first policy to mature was the one in favor of Alma, and was paid to B. as her guardian, who invested the proceeds in the name of the mother. Alma, having married K., repudiated the agreement made during her minority, and claimed all the proceeds of the policy.
The court, in a well-considered opinion, reviewed Clark v. Durand, Kerman v. Howard, and Foster v. Gile, and remarked: “ With great respect for the view thus taken ... I am constrained to think that in such a case there must either be an actual vested interest in the beneficiary named in the policy, which the insured cannot of Ms independent volition take away, or no vested interest whatever; *37 for the existence of a subsisting vested interest in the beneficiary seems inconsistent with a reserved right of revocation in the insured.”
The cases of Ricker v. Charter Oak Life Ins. Co. (32), above, and Landrum v. Knowles (20), above, were then considered, and the court distinguished the case under consideration by saying: “ Whatever principle of law might be regarded as applicable and controlling if the right of Mrs. K. to the first policy, in which she was named as beneficiary, or its proceeds, was involved, an important fact in the case is, that the complainant surrendered that policy and received from the company a paid-up policy payable to Mrs. K.” “This new policy was an absolute promise on the part of the company, in consideration of the last payments of premiums, to pay her §1,690. It was not a policy liable to lapse, but it constituted an absolute, fixed liability.”
The court held that it was an executed gift from B. to his daughter, which he could not revoke, and that, having repudiated the agreement made during her minority, she was entitled to the proceeds of the policy.
(38.) Herbert v. Mutual Life Ins. Co., 8 Sawyer, 198; S. C., 11 Ins. L. J. 567; U. S. Circ. Ct., 1882. Deady, J.
Bill for specific performance.
A. contracted with an insurance company for a policy on his life for his wife’s benefit, paying the first premium in advance. Before it was delivered to him, he died. His wife sued to compel the com- / pany to deliver the policy to her.
Reid, on demurrer to the bill, that she was entitled to the policy; and the court, having taken jurisdiction to compel delivery, will retain it, when there has been a loss or death.
(38a.) Chapman v. McIlwrath, 77 Mo. 38. Ray, J.
A. insured his life for his own benefit. On marrying, he delivered the policy to his wife, to be hers exclusively; and she retained it, as well as the receipts for premiums paid by him. After his death, she delivered it to Ills administrator, Mcl., who collected the money due on it, and applied part of it to payment of debts of the estate. The balance was, by order of the probate court, credited as being the property of the widow, and not of the estate. At the time of his death, the insured was bondsman for the curator of one C., and liability on the bond having attached to his estate, C. brought this suit as a creditor of the estate, to set aside the final settlement on the ground of fraud.
Reid, that the policy was assignable by delivery, it being a chose in action. “ Ho writing is necessary, at least so far as vesting the *38 equitable interest is concerned.” Citing St. John v. Am. Mut. Life Ins. Co., 13 N. Y. 31.
Also, that the assignment by delivery having occurred before the signing of the bond, and when the husband had no existing creditors, it was but a reasonable provision for the wife, and could not be avoided by any subsequent creditors without proof of an intent to defraud them at the time the policy was delivered.
(39.) Wilburn v. Wilburn, 83 Ind. 55. Elliott, J.
Proceeding to determine distribution.
Policies on life of W. for the benefit of, and payable to, his heirs. W. died, leaving his third wife a widow, and children by all his wives, eleven in all. The widow claimed one-third, which was resisted by the children, who conceded one-twelfth. Held, that she was entitled to but a twelfth, the court saying that the contract and not the statute fixed their rights, and also saying, “In truth, the policy is not the property of the insured in any sense, but is the property of the bene, ficiary from the day of its issue, for from that time he has the whole beneficial interestciting Pence v. Makepeace (31), above, and “he alone has the right to assign or surrender it;” citing Ruppert v. Union, &c. Ins. Co., 7 Robt. 155; Chapin v. Fellowes (18), above.
(40.) Harley v. Heist, 86 Ind. 196. Zollars, J.
Bill of interpleader.
S. took out a policy upon his own life, whereby the insurer contracted “ to pay ... to the said assured, his executors, administrators or assigns . '. . for the benefit of, and payable to ” his wife. The wife died before him, leaving children, and subsequently S. assigned his interest in the policy to H.,- his creditor, who paid later premiums. The wife’s administrator claimed the proceeds.
Held, that, by a fair construction of its terms, the policy was for the benefit of, and payable to the wife, and not to the representatives of the husband; and that “ upon its execution the title vested in the wife and not in the husband.” Also, that the assignment was valid to transfer the interest of the husband in the money as heir-at-law of his wife; subject, however, to the rights of her administrator.
The decision reviews Hutson v. Merrifield (29), above; Pence v. Makepeace (31), above; Wilburn v. Wilburn (39), above; Keller v. Gaylor, 40 Conn. 343; Chapin v. Fellowes (18), above; Ricker v. Charter Oak Life Ins. Co. (32), above.
The court further says, if one “ wishes to retain to himself the control and ownership of the policy in such a case, he may so provide in the policy. It was to avoid this so-called wrong, that the Wisconsin court has held that the person procuring the policy may dispose of it *39 without the consent of his nominee. Such a view, we think, is not consistent with legal principles, is in conflict witli former rulings of this court, and against the weight of authority in other States.”
This evidently refers to Clark v. Durand (50), below.
(41.) Glanz v. Gloeckler, 104 Ill. 573; S. C., 12 Ins. L. J. 297; Nov. 1882. Mulkey, J.
G. took out a policy upon his own life in favor of his infant daughter, the contract being in form between the company and the daughter, “her executors, administrators and assigns,” in consideration of premiums to be paid by her. G. paid all the premiums out of his own moneys, and kept possession of the policy. Upon her death before G., her administrator brought action against G. for possession of the policy.
The court held that the administrator should recover, on the ground that, as the contract was, by its terms, between the insuring company and his intestate, her executors, &c., it was vested in him as her legal representative. Citing Eadie v. Slimmon (1), above; Knickerbocker Life Ins. Co. v. Weitz (9), above; Swan v. Snow (10), above; North Amer. Life Ins. Co. v. Wilson, 111 Mass. 542; Continental Life Ins. Co. v. Palmer (28), above ; Hutson v. Merrifield (29), above.
(42.) Fuller v. Linzee, 135 Mass. 468. W. Allen, J.
Policy issued on life of A. by a New Jersey company, payable in said State to his wife, “or assigns,” or, in case of .her dying before her husband, to the children. The whole family were lost at sea. B., as administrator for the estates of both husband and wife, received the money on the policy, receipting as administrator for both estates, “ for whom it may concern.” The action was to determine the right to the money.
Held, that the contract must be construed according to its terms and with reference to the laws of the State incorporating the company; and that the interest of the wife under it was contingent upon her surviving her husband, and neither her assignees nor representatives could show any right to the money except upon proof of such survivorship. Citing De Rouge v. Elliott (26), above; Knickerbocker Life Ins. Co. v. Weitz (9), above; Moehring v. Mitchell, 1 Barb. Ch. 264; S. C., aff’d, 3 Den. 610.
(43.) Damron v. Penn. Mutual Life Ins. Co., 99 Ind. 478. Nov., 1884. Bicknell, Chief Commissioner.
Action by widow against insurance company and claimants under assignment.
D., a resident of Indiana, took out a policy payable to his wife. Having removed to Illinois, he and his wife joined in an assignment *40 of it to secure debts of the husband. At this time, the laws of that State allowed a wife to pledge a policy in her favor for her husband’s debts. D. and wife returned to Indiana, where he died.
The court, decided the assignment to be valid by the laws of both States, and cited, Hutson v. Merrifield (29), above; Pence v. Make-peace (31), above; Wilburn v. Wilburn (39), above.
(44.) Johnson v. Van Epps, 110 Ill. 551; S. C., 14 Ins. L. J. 194. May 19, 1884. Ill. Sup. Ct. Mulkey, J.
J. insured his life for the benefit “of his wife, or the legal representatives of the said J.” The wife having died, J. surrendered the certificate to the insuring company receiving a new one, with benefit payable to V. who, he represented, was his affianced, but who was, at the time, in fact a married woman, but subsequently, and before J.’s death, obtained a divorce. On the death of J., who left no direct descendants, his collateral heirs claimed the proceeds of the policy. Held, that upon the death of Mrs. J., the interest in the insurance vested in the “legal representatives ” of J., who were his executors or administrators; but that J. during his lifetime had complete control over it, and could, with the consent of the insurer, surrender the policy and take out another, making a different disposition of the proceeds.
The court deemed it unnecessary to inquire whether the claim of V. stood on the same footing as one founded upon a wager policy, as the question did not affect the claim of the collateral heirs.
(45.) Timayenis v. Union Mut. Life Ins. Co., 22 Blatchf. 405; S. C., 13 Ins. Law J. 762. July 1, 1884. U. S. Circ. Ct. Wallace, J.
One R.. voluntarily and- without assistance from T., or any one else, applied for and obtained insurance upon the life of T. “for the sole and separate use” of the wife of T. (who was R.*s sister), and her children. R. retained the policy, -but sent his sister a copy of it, saying he kept the original in order to collect the proceeds and use them for her benefit. R. paid four annual premiums and then surrendered the policy to the company, and obtained from it a paid-up policy on the life of T. payable to himself (R.), for' §2,500. This was done without the knowledge or consent of T.’s wife or her children.
No fraud or bad faith was attributed to R. or the company, as each acted on the supposition that R. had the right to control the policy and its proceeds.
On the death of T., R. submitted proper proof of death, and the insuring company paid the amount of the last policy to him. The widow of T. and her children "then offered proof of his death, and were told that the money had been paid to E.; this being the first *41 information they had that a change had been, made in the original contract.
In a suit by the widow and children against the company, the court held that the fact that R. obtained the insurance instead of the plaintiffs or the insured was immaterial, the legal effect being the same; neither was it material that R. might have terminated the contract by refusal to pay the premiums, for upon payment of premiums, defendant’s obligation to the plaintiffs became fastened. Nor was there anything in the policy, or in the transactions concerning it, by which the court could infer that R. acted as the agent of the wife of T. or her children.
The policy being merely the evidence of the contract between the parties, the fact that R. kept it in his possession had no effect upon the rights of the beneficiaries named in it; and this would have been so if the plaintiffs had remained ignorant of the whole transaction until the death of the insured, for the contract was made for their benefit, and they were named in it as the parties, and the only parties interested in its performance. Citing Austin v. Seligman, 21 Blatchf. 506; S. C., 18 Fed. Rep. 519; Simson v. Brown, 68 N. Y. 355; Hendrick v. Lindsay, 93 U. S. 143; Ricker v. Charter Oak Life Ins. Co. (32), above; Pilcher v. N. Y. Ins. Co. (36), above.
The contract was made in Massachusetts, and was to be performed there; consequently it is governed by its laws. But the laws of that State do not change the rights of the parties as determined on general principles.
(46.) Boscawen v. Scott, 50 L. T. R. N. S. 386; Chancery Div. May 24, 1884. Kay, J.
Action for declaration of the rights of certain persons in policy moneys.
A. insured the life of his wife in the names of two persons, and subsequently by correspondence (as the court held), established in them an irrevocable trust, the effect of which was to give his wife a general power of appointment by will or deed over the policy moneys, and in default thereof the money was.to go to her children. On the marriage of an only son, A. and his wife, who did not know of her power over the moneys, joined in a settlement which, among other things, assigned the policy and proceeds to trustees for the son’s benefit, reciting that the policy was vested in A.' for his own benefit, and reserved life interests in the property settled upon the son to A., and, after his death, to his wife. A. died leaving a will by which, after a bequest to his son, he made his wife residuary legatee. The son died, bequeathing his residuary estate to trustees for his wife and children. The wife of A, then died, and her will, after certain *42 bequests, left her residuary estate in trust for the benefit of her daughters.
The premiums were paid by A. during his life, and afterwards by the son and his executors.
Held, that the wife’s act in joining in the deed of settlement was not an exercise of her power of appointment under the original trust; but that she did exercise such power by her will.
Held, also, that as she had taken benefits under the settlement (a life interest), she could not both approbate and reprobate; and her estate must make good the amount to the persons entitled under the settlement.
(47.) Ætna Life Ins. Co. v. Mason, 14 R. I. 583; S. C., 14 Ins, L. J. 572. Durfee, Ch. J.
A. took out a policy on the life of his wife, payable in four years to her, if then living, and if not, to himself. He paid all the premiums, retained the policy and received payments upon it. The wife was living at the maturity of the policy, but had filed a petition for divorce.
It was held that under statute of Rhode Island (Pub. Stat. R. I. c. 166, § 21), the wife was entitled to the amount due on the policy at its maturity.
The court said, “ Indeed, the cases go far to show that this would have been the effect without the statute:” citing Landrum v. Knowles (20), above; Ricker v. Charter Oak Life Ins. Co. (32), above; Fowler v. Butterly, 78 N. Y. 68; Pilcher v. N. Y. Life Ins. Co. (36), above.
The decision does not refer to the divorce proceedings, except to mention the fact in the statement of the case.
(48.) Scott v. Dickson (Penn., 1884); abstr., in 13 Wash. Law. Rep. 495.
When A. called for a policy on his life, for which he had made application, he then and there assigned it to B. A. kept the assignment and the policy, and paid all premiums.
Suit to determine whether A.’s administrator or B. -was entitled to the proceeds.
Held, that while the • assignment, as such, was void for want of delivery to B., yet it being apparent that it was A.’s original intention to insure his life for B.’s benefit, the form of the transaction was immaterial, and the assignment was a direction by A. to pay the money to B. given simultaneously with the issuing of the policy, and with the same effect as if written therein.
A man may insure his own life, paying the premium himself, for the benefit of another who has no insurable interest; such a-transaction is not a wagering policy.
*43 (49.) Felrath v. Schonfield, 13 Ins. L. J. 783.
Under a statute providing that 11 any married woman, by herself and in her name, or in the name of any third person with his assent as her trustee, may cause to be insured for her sole use, the life of her husband,” and that the proceeds shall be payable to h'er own. use, free from claims of her husband’s creditors, a husband may take out insurance upon his own life payable to his wife as beneficiary without fraud against his creditors.
II. Oases favoring the claim of the person taking out the policy.
(50.) Clark v. Durand, 12 Wisc. 223. June, 1860. Dixon, Ch. J.
■ C. insured her life, at her own expense, the policy being payable to D. as guardian of her infant child, as a gratuity or voluntary provision for such child. D. was not and never was a legal guardian of the child. C. retained the policy in her own possession; and, being unable to pay further premiums, offered the policy to D., to whom she was indebted, to be his, lie agreeing to keep it in force for his own benefit, which offer being accepted, the policy was delivered to him, though no formal assignment was made, and it does not appear that the insuring company was notified of the transfer. D. paid the premiums as they matured, and, on the death of C., the sum due on the policy was paid to him, he receipting therefor as guardian for the infant.
In action by the infant against D. for the money received by him, the court took the ground that D., C. and the company were the only parties, real and nominal, to the contract; and that the criterion by which to determine whether the plaintiff had any interest in the proceeds of the policy was, whether, during the life of C., he had such an interest in the policy as would enable him to compel 0. or D., as nominal trustee, to keep up the premiums, or to restrain or prevent her and the defendant from transferring it. That plaintiff not being a party to the contract, which, so far as he was concerned, was a mere gratuity or gift, a voluntary thing, the real parties to it might do or cease to do with it as best suited their convenience or pleasure.
The court held that the policy was an executory contract between 0. and the company, the defendant consenting to act as trustee, and, like all executory agreements, • was subject to such disposition, changes and modifications as the parties to it might make.
The consent of the company to the assignment was inferred from the fact that it received premiums from D. and paid the proceeds of the policy to him.’
No authorities are cited in the opinion.
(51.) Kerman v. Howard, 23 Wisc. 108, June, 1868. Cole, J.
*44 H. insured his life, the policy being payable to his wife or her legal representatives. Having survived his wife, he by will directed that the proceeds of the policy should go to his two children by a former marriage, and to a daughter of his wife by a previous husband in equal parts. The wife’s daughter claimed all the money.
The court affirmed its decision in Clark v. Durand (50), above, and reviewed Eadie v. Slimmon (1), above.
(52.) Universal Life Ins. Co. v. Cogbill, 30 Grat. (Va.) 72. Christian, J.
Action to recover premiums.
Policy obtained by husband on his life for the benefit of his wife. The company became insolvent, and to this action objected that the wife only could recover.
Held, that as the premiums were paid by the husband, he alone had a right to demand repayment. The wife could make no demand against the company until after his death, and was neither a necessary or proper party.
(53.) Foster v. Gile, 50 Wisc. 603. Dec. 17, 1880.
B. procured insurance upon his life payable to his two minor sons John and Walter, “their guardians, executors, administrators or assigns.” The two sons died before their parents, and B., the father, died leaving the mother surviving. Documents were found among the papers left by B., changing the disposition of the proceeds of the policy, but they were inoperative.
The contest was between the administrator of the children, on one side and the administrator of B, on the other, for the amount due on the policy.
The court (Lyon, J.) reiterated the principle declared in Clark v. Durand (50), above; and Kerman v. Howard, 23 Wisc. 108: “That a person who procures insurance on his own life for the benefit of another, and pays the premiums thereon, may dispose of it by will or otherwise, to the exclusion of the beneficiary named in the policy;" but, reviewing Ricker v. Charter Oak Life Ins. Co. (32), above, modified its previous ruling by saying, “ Notwithstanding what was said in Clark v. Durand, we think the taking of the policy by the insured, payable to another, is so far in the nature of an executed voluntary settlement that it vests in the person to whom the insurance money is made payable an actual subsisting interest in the policy, but not the absolute, unconditional ownership of it, and of the moneys therein agreed to be paid. The interest of the beneficiary is subject to the right of the assured, who has paid the premiums, to revoke the same and retain it himself or vest it elsewhere. At least he may do this with the consent of the company which issued the policy.”
*45 By applying the rules relating to legacies under a will, the court arrived at the conclusion that “under the circumstances of the case, the beneficial interest of the children under the policy did not lapse by their death (their fathe’" surviving them) but goes to their administrator to be distributed as intestate estate of such children,”
Cassoday, J., in a separate opinion, took the ground that “an insurance policy is a contract to pay money on conditions, and as such is personal property.” . . . u lb is & chose inaction and governed by the same principles applicable to other agreements involving pecuniary obligations.” Citing St. John v. Am. Mut. Life Ins. Co., 13 N. Y. 39; Hutson v. Merrifield (29), above; Palmer v. Merrill, 6 Cush. 282. After reviewing Cont. Life Ins. Co. v. Palmer (28), above, which held that a transmissible interest vested in the children upon the issuing of the policy, and Drake v. Stone, 58 Ala. 133; Libby v. Libby, 37 Me. 359; Hutson v. Merrifield (29), above, to the same effect, he explained the facts of Clark v. Durand, as not being inconsistent with those authorities, and distinguished it from Kerman v. Howard.
(54.) Bickerton v. Jaques, 12 Abb. N. C. 25, N. Y. Sup. Ct, Oct., 1882. Daniels, J.
Submission to determine right to insurance money.
J. insured his life payable to his sister, who kept house for Mm and was dependent upon him for support. He retained possession of the policy. Upon her prior decease, he surrendered the policy and received a new one, payable to a nephew.
The administrator of the sister claimed the proceeds.
Held, that the fact that J. retained possession of the policy and paid the premiums, shows clearly that it was his intention not to please the insurance irrevocably beyond liis control; and, considering his sister’s relations to him, it was his intention, in procuring the policy, to provide for her after his own decease, and that, such intention being defeated by her dying before him, he had the authority to give it another and different direction.
To sustain its position the. court cited: Clark v. Durand (50), above; Kerman v. Howard (51), above; Gambs v. Covenant Mut. Life Ins. Co. (25), above; Hudson v. Weinfield (29), above; Olmstead v. Keyes (5), above. See also 17 Western Jurist. 297.
This case is of special interest because it was not within the statute of 1840, concerning wives’ policies, the other New York cases being decided upon the true intent of that statute. The authorities upholding the theory that a transmissible interest vests immediately in the beneficiary upon the issue of a policy were not referred to in the opinion.
*46 (55.) Union Mut. Life Ins. Co. v. Stevens (Ill. Dist. Ct. 1888) 19 Fed. Rep. 671; S. C., 13 Ins. L. J. 253. Blodgett, J.
S. insured his own life for the sole use of his wife and heirs, and paid the premiums himself, retaining possession of the policy. The wife was killed in arailroad accident, and he received $2,000 from, the Railroad Company as damages. This sum (describing it) he left by will to his daughter by said wife. Having married again, he applied to the insurance company to change the terms of the policy so that it would be payable to himself, which the company declined to do, but recommended that he allow the policy to lapse by not paying the next premium, and applying for a new policy, which was done, the new contract being in all respects like the old one, except that it was “ for the sole and separate use ” of himself.
At his death, his daughter by the first wife, who was her sole heir, claimed the proceeds.
The court, after stating the opposing views of the law as to the interest of a beneficiary in such cases, said: “ I do not intend to decide that in all cases where a life insurance policy has been taken out, payable to a certain person as beneficiary, it is in the power of the person whose life is insured, by a subsequent agreement with the insurance company, to change the beneficiary, because it is obvious that each case of that character must depend almost wholly upon its own peculiar facts.”
He then argues that since S. could not be compelled to pay the premiums, be being under no obligation even to the beneficiary to pay them for her benefit; and since, by his choosing not to pay them, the policy would lapse and be void, he had a right to make the arrangement with the insurance company for a new policy; and that such an arrangement for the purposes of this case could be made, “ for tlic-express purpose and no other purpose than to change the beneficiary.”
He adds: “It strikes me very forcibly that this policy, at the time the change was made, was, at most, an inchoate or uncompleted gift from S. to his wife and heirs. He had the right to change his mind, and could revoke that gift, and direct that the money secured by this policy should go elsewhere.” And lie “was as much at liberty to change the direction of the money which would accrue at his death upon this policy, as ho was to change his will in reference to the disposition of any of his estate at any time preceding his death.”
(56.) In Tripp v. Vermont Life Ins. Co., 55 Vt. 100; S. C., 12 Ins. L. J. 854), the court held that an administrator could recover on a policy expressed to be an agreement with the insured, his executors, administrators or assigns, to pay the insured or his assigns on a day specified, or, should he die previous thereto, to pay *47 to his mother. Defendants objected, that the action should have been brought in the name of the mother, the death having been previous to the specified date.
The court, distinguishing the case of Davenport v. N. E. Mut. Life Assoc’n (47 Vt. 528), held, that as the contract was with the insured, the consideration moved from him and the promise to him, his representatives alone could recover, although a third person, not a party to the contract, was the beneficiary.
(56a.) Meily v. Hershberger (Penn, 1885); abstr., 13 Wash. Law Rep. 495.
A. insured her life, naming as beneficiary B,, who had no insurable interest. B. paid all the assessments. Immediately after A.’s death, B. assigned the policy to C., who likewise had no insurable interest, but who collected the sum insured from the company. In an action by the administrator of A. against C.,—Held, that such a contract of insurance was not void ab initio, nor against public policy; but that as to B. and 0. it was void; therefore, the administrator was entitled to recover the sum paid by the company to C.
(56b.) In Weston v. Richardson (Eng. Chan. Div., Nov., 1882; 47 L. T. R. N. S. 514), it appeared that a father effected an insurance on his own life, paying the premium himself and retaining the policy in his own possession, but the policy was by its terms payable to his daughter. There was no mention of the policy in his will. Held, that the taking out of sucli a policy was a completed gift without delivery of it to the daughter, and that she, and not the testator’s executor, was entitled to the insurance money.
As to whether,—upon the theory that he who took out the policy has an absolute right until be parts with it,—a transfer to the beneficiary, followed by payment of subsequent premiums by the latter, would deprive the former of all right,—see a similar question arising on a lease with privilege of purchase, in Dodson v. Dodson, 11 Cin. Week. L. Bul. 198, where it was held, that a pledge by a husband lessor, after he had given the lease to his wife, was valid.
As to charging the beneficiary as trustee for a third person whose money was used to pay the premiums,—see Shaler v. Trowbridge, 28 N. J. Eq. 595; S. C., 5 Rep. 214.
IJit. Oases on the meaning of words of consanguinity or affinity used in / designating a beneficia/ry, and on the effect of divorce.
(57.) McKee v. Phoenix Ins. Co., 28 Mo. 383. Scott, J.
Suit for money had and received for use of plaintiff, and for damages for breach of contract.
*48 A wife insured her husband's life at her own expense and for her sole use. She obtained a divorce on the ground of abandonment, and continued to pay premiums until the company refused to accept them, alleging that she had no further interest in her husband’s life after being divorced. Pour children of the marriage and the husband still lived. No statute in force. Issue was made by demurrer to petition.
The court took the ground that, notwithstanding the divorce, the husband was responsible for the support of the children, and might be decreed to pay alimony, the effect of which would be to make the wife his creditor, and, being so, she would have a right to insure his life, and the company could not terminate the contract.
No authorities cited.
(58.) Matter of Welch, 43 Conn. 343. Foster, J.
Policy issued on the life of the husband, on the application of and for the benefit of the wife. Bight years after, they were divorced. The premiums were paid partly by the wife. The policy had been in possession of the wife, but at time of the divorce was in the hands of the husband. He promised, both before and after the divorce, to keep it in force for her benefit, but allowed it to lapse immediately after the divorce.
Held, that his estate was not liable for its value.
No authorities cited.
(59.) Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457. Bradley, J.
Policy issued on joint lives of husband and wife, payable to the survivor. They were divorced, and both married again. The wife survived. No children of the marriage.
Held, that “a life policy originally valid, does not cease to be so by the cessation of the assured party’s interest in the life insured.”
(60.) Olmstead v. Keyes (5), above. Earl, J. Dictum.
“Yet it cannot be doubted that a policy held by a wife upon the lift- of her husband continues valid, although her interest in his life has ceased in consequence of a divorce.”
Citing Bliss on Life Ins. § 30.
(61.) Phoenix Life Ins. Co. v. Dunham, 46 Conn. 79; Abst. S. C., 8 Rep. 331, 1878. Pardee, J.
Bill of interpleader.
Policy on life of husband, payable to sole use of wife, and in case of her death before his, tó their children—the charter of the company providing for the protection of such beneficiaries as against husband’s creditors and representatives.
*49 The wife, to whom, the policy was issued, and who retained it, obtained a divorce, paid one premium,—he having paid the earlier ones,—and surrendered the policy for a paid-up policy without his knowledge. No children survived. She died before her husband. The proceeds were claimed on behalf of their respective estates.
The court held that there was a valid contract between the wife and the company. “ She held a chose in action.” If the policy had been payable to her without condition she would have been the owner of property, which she would, both by the special law and the declaration of the husband, hold independently of him, and which she could sell or assign, and one which, upon her death, would pass to her legal representatives. The condition (of leaving children) having failed, 'she so held the first policy, and had the right to exchange it for the second. “ Neither the dying nor the divorced husband can control the ultimate destination of the sole estate of the surviving or separated wife.”
The cases of Conn. Mut. L. Ins. Co. v. Burroughs (17), above ; Chapin v. Fellowes (18), above; Continental Life Ins. Co v. Palmer (28), above; were noted with approval.
(62.) Watson v. Centennial Mut. Life Ass’n, 21 Fed. Rep. 698; S. C., 14 Ins. L. J. 73. Brewer, J.
Where A. and B. lived together as husband and wife, and were so regarded by the relatives, friends and the community, though no marriage ceremony had been celebrated, and A. took out insurance upon his life for the benefit of B., the court held that B. had an insurable interest in A.’s life, and this, notwithstanding the fact that her name was inserted in the policy as Mrs. B., instead of Mrs. A.
(63.) Hardy v. Warren, 136 Mass. 328 ; S. C., 17 Rep. 176. Allen, J.
A woman died leaving a legal husband from whom she had obtained a void divorce. Since the divorce, she had been living with another man, whom she claimed was her lawful husband. In her will she made a bequest to her “husband.”
Held, that evidence was admissible to show that she intended her husband de facto, and not her lawful husband..
(64.) Ruppert v. Union Mut. Ins. Co., 7 Robt. 155, Superior Court of N. Y., 1867. Barbour, J.
Policy on life of R., payable “for the sole and separate use and benefit of his three children.” By his will, R. devised the policy to his executors in trust for certain purposes, and they bring the action. The charter of the insuring company authorized it to issue policies “expressed to be for the benefit of any woman, minor or minors,” *50 and provided that they should be independent of the insured and his creditors.
Held, that the beneficiaries were vested with the entire beneficial interest in the sum insured upon and by the delivery of such policy.
(65.) Price v. Phoenix Mut. Life Ins. Co., 17 Minn. 497; S. C., 10 Am. Rep. 166. Berry, J.
Policy on husband’s life, payable to wife, and in case of her death, to their children. The wife died before the husband. The guardian ad litem of the children brings this action against the insurer.
Held, that such guardian might sue for the children, the right not being restricted to a general guardian.
(65a.) Koehler v. Centennial Mut. L. Ins. Co. (Iowa, 1885), 23 Northw. Rep. 687. Iowa, Rothrock, J.
An insurance policy issued to K. provided that the amount collected from assessments (less cost of collection) should “be paid to his wife, M. K., and children, or their legal representatives.” K. had been married before, and had children by his first wife still living, when he died.
Held, that all of the children of the deceased should be included in the distribution of the fund, and not merely the widow and her child, the issue of her marriage with the assured.
(65b.) Gosling v. Caldwell, 1 Lea (Tenn.) 454; S. C., 7 Rep. 410, held, that a life policy taken out by a husband, and expressed to be payable to his “ heirs,” is payable to his widow and next of kin, the word “heirs” being flexible and taken to mean “next of kin,” because the fund is personalty ; and that their right was not impaired by an assignment made by the husband during his life.
Por a note collecting numerous cases on the effect of a decree for divorce in respect to the subsequent relation of the parties both before and after the death of either, and the same question with respect to judicial separation,—see 65 Am. R. 536-560.
IV. Benevolent Societies’ cases.
(66.) Ballou v. Gile, 50 Wisc. 614; S. C., 10 Ins. L. J. 200. Taylor, J.
B. was a member of a benevolent society, the regulations of which provided that, on the death of a member,1 ‘ $3,000 should be paid to his family or those dependent upon him as he may direct.” B. named his two children as beneficiaries, but they died before him ; and at the time of his own death he had not made any other direction as to the disposal of the fund.
*51 Held, that his widow was entitled to it as against his administrator.
(67.) Splawn v. Chew, 60 Tex. 532; S. C., 13 Ins. Law Jour. 450.
C. took out a certificate in American Legion of Honor for §5,000, payable to his father and mother, paying all assessments and premiums himself and retaining possession of the certificate. Subsequently, he made a will bequeathing the certificate and the proceeds of it to his minor children.
Held (Willis, Ch. J.), that the beneficiaries named in an ordinary life policy become the owners of it the moment it is issued, and that the person procuring the insurance cannot, by any subsequent act of his, transfer to others the interest of those beneficiaries.
Citing Bliss on Life Ins. § 317, 337; and Ricker v. Charter Oak L. Ins. Co. (1), above.
But the person procuring the policy may enter into arrangements with the insurer as to the persons who are to receive the benefit of the policy, or as to what control over it the insurer is to exercise.
Citing Bliss on Life Ins. § 318; and Hutchings v. Miner, 46 N. Y. 456.
(68.) Highland v. Highland, 109 Ill. 366; S. C., 13 Ins. L. J. 463.
The constitution of a benevolent order provided that the member might cause to be entered on the record-book a direction to whom the benefit should be paid, or might have a benefit certificate issued to him. In case of no direction, either by will, entry or benefit certificate, the lodge might cause payment to be made to parties entitled thereto. The benefit certificate expressed that payment would be made to such person “as he may by will or entry on record book, . . or on the face of this certificate direct.” H. took out a certificate when unmarried, and indorsed on it that it was his will that payment should be made to his sister.
He afterwards married, and shortly after died. The certificate remained in his possession, never having been delivered to the sister.
Held, 1. That the indorsement was not a will, but a direction as to payment in accord with the constitution. 8. That the non-delivery of the certificate did not affect the claims of the sister. 3. That the fact that the fund was by the terms of the charter a widows’ and orphans’ fund did not affect her claims, when the charter also provided that the fund should be “paid to his family or as he may direct.” 4. That a subsequent writing giving in general terms all his effects to his wife did not revoke the certificate.
(69.) Weisert v. Muchl, 81 Ky. 336; S. C., 17 Rep. 45.
A member of a mutual benefit society, under a stipulation that the *52 benefit was to be paid “to his heirs,” executed a testamentary direction that the amount due should not be paid to them, but be paid to a third person, the plaintiff in this case, who now sued the administrator to recover the balance of the fund remaining after payment of debts.
The court held that the contract of a mutual benefit association should have effect, in this respect, like that embodied in a policy of life insurance: and followed the rule laid down in Mr. Bliss’ work, sections 317, 389, saying that it seems to be accepted by the authorities generally, to the effect that a policy and the money to become due under it belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by an act of his, by deed or will, to transfer to any other person the interest of the person named. He is under no obligation to continue to pay the premiums, unless he has covenanted to do so. But if he does, the person originally designated in the policy will derive the benefit.
(70.) Penn Mutual Relief Association v. Folmer, 87 Penn. 133; S. C., 6 Reporter, 788.
Ileld, that where a mutual, benefit association charter provides for payment of a sum on the death of each member to a person to be designated by the member on joining, with a proviso that when a member dies leaving a wife and children he shall have no power to deprive them of benefits, the proviso must be restricted, by construction, to cases where there was no designation, in the application of the member and the contract of the company, of the person to whom payment was made. The benefits of which a member could not deprive his family were only those of a member who had made no other designation in liis contract with the company.
Upon this general subject, see also National Mutual Aid Assoc. v. Gonser (Ohio, 1885); 1 Western Rep. 4.

It is set forth in the complaint as follows:
“ Plaintiff further shows that he has offered to said MaryE. Grind-lay to make good to her all and any sums of money which she may have paid or parted with, because of premiums paid or otherwise, on account of said policy of insurance, and is still ready and willing to do so, and plaintiff before the commencement of this action also offered and still offers to pay to the defendant, Mary E. Grindlay, the full cash value of said policy of insurance to the extent of whatever interest, if any, she may have in said policy of insurance, to cancel or assign the same, all of which the said Mary E. Grindlay neglects and refuses to do.”